UNITED STATES DISTRICT COURT
IN AND FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PHILLY SHIPYARD, INC. | C.A. No. |
| Plaintiff, | |
| v. | |
| THORNDON BEARINGS INC., | |
| Defendant. | |

## COMPLAINT

Plaintiff, Philly Shipyard, Inc. (hereinafter "PSI"), by and through its undersigned counsel, brings this Complaint against the Defendant, Thorndon Bearings Inc. and says as follows.

## PARTIES

1. PSI (f/k/a Aker Philly Shipyard, Inc.) is a corporation organized under the laws of the Commonwealth of Pennsylvania having its principal place of business in Pennsylvania at 2100 Kitty Hawk Avenue, Philadelphia, Pennsylvania 19112 and is engaged in the business of commercial ship construction and repair.

2. Defendant Thorndon Bearings, Inc. ("TBI") is a corporation organized under the laws of Canada with its principal place of business located at 3225 Mainway, Burlington, Ontario, L7M 1A6, Canada, and is engaged in the business of manufacturing bearing systems, seals and shaft line products for the marine industry.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 based upon diversity of citizenship of the parties and the amount in controversy.

4. Jurisdiction and venue in this Court are proper because PSI's General Terms And Conditions For Procurement of Shipbuilding Materials and Services for Aloha Class Container Vessels dated July 30, 2014, ("PSI GT&C"), which are incorporated in and form part of the operative contract between the parties at issue in this action, provide that any dispute between the parties "must be pursued in a state or federal court of competent jurisdiction located in Philadelphia, PA, USA." Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(b). A true and correct copy of the PSI GT&C is attached hereto as Exhibit 1.

## FACTS

5. In 2013 PSI entered into contracts to construct two (2) new commercial ocean-going cargo vessels, known as Aloha Class Container Vessels, for Matson Navigation Company, Inc. This action relates to the construction of the first of the two vessels, known as Hull No. 29.

6. Pursuant to PSI's Purchase Order No. 4500024505 executed by TBI on April 12, 2017 ("Purchase Order"), TBI obligated itself, as "Seller," to execute the scope of work defined therein which entailed, in part, the installation of bronze liners onto a propeller tail shaft that had been manufactured in South Korea for incorporation in Hull No. 029. A true and correct copy of the Purchase Order is attached hereto as Exhibit 2.

7. Clause 2 of the Purchase Order, "Document Hierarchy," provided that the PSI GT&C "shall apply to the Purchase Order and are incorporated by reference herein and made a part hereof."

8. The technical requirements for the work to be performed under the Purchase Order were set forth in PSI Document No. CV3600-631-90-501, "Subcontracted Work Scope Tail Shaft Lining & Coating," ("Scope of Work") and PSI Drawing No. AA5023MC02, "Detail of Shaft and Coupling Bolts," both of which are referenced in the Purchase Order. Copies of these documents

are attached hereto as Exhibit 3.

9. As specified in the Purchase Order, it was expressly understood and agreed that TBI would sub-contract the installation of the tail shaft liners to non-party Precision Roll Grinders, Inc. ("PRG") located in Lewisport, Kentucky, but that TBI would remain fully responsible to PSI for performance of the work defined in the Purchase Orders in exchange for payment of a surcharge of ten (10) percent of the subcontractor's charges.

10. Section 7.1 of the PSI GT&C provides that "SELLER shall take full responsibility for the quality of the equipment and the GOODS and shall be responsible for the inspection, testing and quality control of the GOODS or works and equipment including those of its subcontractors."

11. Section 22 of the PSI GT&C provides in relevant part, as follows: "SELLER [TBI] shall be responsible for the acts or defaults of any of its subcontractors [PRG] and their agents or employees, as fully as if they were the acts or defaults of SELLER and its agents and employees."

12. Section 36 of the PSI GT&C provides in relevant part, as follows: "SELLER [TBI] shall indemnify, defend and hold harmless BUYER [PSI] … from and against any and all losses, damages, expenses (including attorneys' fees and legal expenses)…arising out of or resulting from or claimed to arise out of or result from … damage to Buyer's property … arising out of, or claimed to arise out of, or in any way connected with or claimed to be connected with SELLER's performance of the terms of this Contract."

13. Section 43 of the PSI GT&C provides that: [t]he remedies set forth in the Contract are cumulative with, and in addition to, all other remedies, whether in contract or tort, at law or in equity."

14. Section 44 of the PSI GT&C provides that: [t]his Contract is governed, interpreted and enforced in accordance with the laws of the Commonwealth of Pennsylvania, USA."

15. On or about July 8, 2017, the Korean manufactured tail shaft for Hull No. 029 was delivered to PRG's Kentucky facility to perform the liner installation work under the Purchase Order.

16. The tail shaft was inspected and measured before it left the manufacturer's factory in South Korea and all dimensions were found to be in compliance with the specifications.

17. Upon receipt of the machined tail shaft at PRG, PRG performed a full set of runout, roundness, and diameter measurements, which confirmed that the tail shaft was within the dimensional tolerances specified by the manufacturer.

18. The liner installation work by PRG was conducted according to recommended procedures provided to PRG by TBI and, upon information and belief, representatives of TBI were present at the PRG facility when the work was performed.

19. PRG performed the liner installation on or about July 27, 2017, when the bronze liners were heated and shrunk onto the tail shaft for Hull No. 029.

20. After the liners were installed, another set of measurements was taken and revealed that PRG's work had distorted the tail shaft and that the dimensions at the after end of the tail shaft significantly exceeded the design tolerance specifications.

21. PRG then placed the tail shaft onto a lathe to carry out additional measurements which again showed that the dimensions of the tail shaft were not within the manufacturer's permitted tolerances.

22. PRG undertook various additional steps in an attempt to correct the problems with the tail shaft but all efforts were unsuccessful.

23. After evaluating the problems and available corrective measures PSI determined that it would be necessary to ship the tail shaft to Marineshaft A/S in Denmark, a company that

specializes in straightening, repairing and reconditioning propeller tail shafts, which had the capability to straighten the distorted tail shaft and reinstall the bronze liners if necessary.

24.     On August 29, 2017, PSI placed TBI on written notice of the damage to the tail shaft caused by PRG, informed TBI of its intention to ship the tail shaft to Denmark for repair and advised TBI that PSI would hold TBI liable for all losses, costs, damages and expenses incurred by PSI to repair the damaged tail shaft. Letter from PSI to TBI dated August 29, 2017, attached hereto as Exhibit 4.

25.     The damaged Hull 029 tail shaft arrived at Marineshaft's facility on October 3, 2017, where work was successfully performed to straighten the distorted unit and complete the additional work that was to have been performed by PRG under the Purchase Order.

26.     The repaired tail shaft was shipped back to PSI from Denmark on October 26, 2017, arrived at PSI's Philadelphia ship yard on November 21, 2017, and was installed into Hull 029 on November 29, 2017.

27.     Upon information and belief, the distortion damage to the tail shaft was caused by excessive stress imposed on the tail shaft during the work performed by PRG or by the transfer of excessive heat to the tail shaft by PRG during the liner installation process.

28.     TBI's failure to insure that the work by PRG was performed in a manner that resulted in a completed tail shaft that was not damaged and conformed to the required specifications constitutes a breach of its obligations under its contract with PSI.

29.     As a direct result of the foregoing PSI incurred $1,240,475.12 in additional costs and expenses that it would not otherwise have incurred including but not limited to the cost to ship the tail shaft to and from Denmark, the charges of Marineshaft A/S to repair the damage to the tail shaft and the costs associated with the delay in delivery of the tail shaft which required PSI to cut

open the already completed hull of Hull 029 in order to install the tail shaft through the side of the vessel.

## COUNT I

## BREACH OF CONTRACT

30. Plaintiff incorporates by reference the allegations in Paragraphs 1 through 29 of its Complaint as if set forth at length herein.

31. As the contracting party TBI was required to fully perform and satisfy all of its obligations under the Purchase Order, the incorporated PSI GT&C and the Scope of Work, to deliver a completed tail shaft to PSI which conformed in all respects with the contract specifications in accordance with PSI's schedule.

32. TBI breached Section 7.1 of the PSI GT&C by failing to implement inspection, testing and quality control standards and procedures to insure that the work performed by its subcontractor PRG would not result in damage to the tail shaft but would instead produce a completed tail shaft which complied with the contract specifications.

33. TBI is liable to PSI for losses and damages which PSI sustained as a result of the damage to the tail shaft caused by PRG's failure to properly perform the work required by the contract pursuant to Section 22 of the PSI GT&C which provides in relevant part that the "SELLER [TBI] shall be responsible for the acts or defaults of any of its subcontractors [PRG] and their agents or employees, as fully as if they were the acts or defaults of SELLER and its agents and employees."

34. TBI is liable to PSI for losses and damages which PSI sustained as a result of the damage to the tail shaft caused by PRG under Section 36 of the PSI GT&C which provides that "SELLER [TBI] shall indemnify, defend and hold harmless BUYER [PSI] … from and against

any and all losses, damages, expenses (including attorneys' fees and legal expenses)…arising out of or resulting from or claimed to arise out of or result from … damage to Buyer's property … arising out of, or claimed to arise out of, or in any way connected with or claimed to be connected with SELLER's performance of the terms of this Contract."

35. TBI breached its contract with PSI by failing to deliver a completed tail shaft which conformed to the contract specifications and as a result is liable to PSI for all additional costs and expenses incurred by PSI as a result, which costs and expenses are in the amount of $1,240,475.12.

**WHEREFORE**, Plaintiff Philly Shipyard, Inc. requests entry of Judgment in its favor and against Defendant Thorndon Bearings Inc. for the aforesaid damages in the sum of $1,240,475.12, plus pre-judgment and post-judgment interest pursuant to 41 Pa. C.S. § 202, costs, and attorney's fees, and for all such other and further relief as is deemed just and proper in the circumstances.

PALMER BIEZUP & HENDERSON LLP

By: /s/ *Frank P. DeGiulio*
    Frank P. DeGiulio
    Kevin G. O'Donovan
    190 N. Indep. Mall West, Ste. 401
    Philadelphia, PA 19106
    215-625-9900
    fpd@pbh.com
    kodonovan@pbh.com
    Attorneys for Plaintiff